IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SAMMY J. MOORE, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL NO. 11-364-GPM |
| | ) |
| DR. ADRIAN FEINERMAN, | ) |
| | ) |
|       Defendant. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Sammy J. Moore filed a deliberate indifference claim under 42 U.S.C. § 1983 in the Circuit Court of Randolph County Illinois, which was removed to this Court on May 4, 2011 (Doc. 2). Before the Court are pending motions for summary judgment by Defendant Adrian Feinerman (Docs. 5, 15). The Court held two hearings to address the motions for summary judgment, and now **GRANTS** Defendant's motion for summary judgment for failure to exhaust administrative remedies (Doc. 15), **MOOTING** Defendant's motion for summary judgment on the statute of limitations (Doc. 5). Mr. Moore has a pending motion to appoint counsel that will also be denied as **MOOT**.

### PLAINTIFF'S 42 U.S.C. § 1983 CLAIM

Mr. Moore is currently confined in Menard Correctional Center in the custody of the Illinois Department of Corrections, and his § 1983 claim arose from incidents that allegedly occurred while Mr. Moore was confined in Menard. According to the complaint, Mr. Moore visited Defendant Dr. Feinerman on May 8, 2008 and on July 30, 2008 to treat Mr. Moore's migraine headaches (Doc. 2-1). Dr. Feinerman refused to treat Mr. Moore's migraine pain. Dr. Feinerman did not complete an

adequate diagnostic evaluation, instead ordering x-rays that he knew had already been completed and that he knew would not aid in diagnosing or treating Mr. Moore's migraine pain.  Mr. Moore claims that Dr. Feinerman's refusal to treat his migraines constituted deliberate indifference to a serious medical need in violation of the Eighth Amendment.

### MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S RESPONSE

Defendant filed two motions for summary judgment, claiming that Mr. Moore failed to file within the statute of limitations (Doc. 5), and claiming that Plaintiff failed to exhaust his administrative remedies (Doc. 15).  The alternate bases for summary judgment are difficult to consider separately, but the primary issue for both is *when* and *if* Plaintiff filed certain grievances.

Mr. Moore filed his complaint on October 28, 2010, and Defendant argues that this filing was beyond the statute of limitations.  Here, the Court borrows Illinois's statute of limitations, which both parties agree is two years.  *See Draper v. Martin,* 664 F.3d 1110, 1113 (7th Cir. 2011) ("In Illinois, the statute of limitations period for § 1983 claims is two years.").  Neither are the dates of injury in dispute–May 8, 2008 and July 30, 2008 are the dates when Defendant allegedly refused to treat Mr. Moore.  Mr. Moore's complaint was over two years from those dates, however, Mr. Moore quite correctly points out in his response that "when a federal court borrows a state's limitations period, it also borrows the state's tolling rules–including any equitable tolling doctrines." *Smith v. City of Chicago Heights,* 951 F.2d 834, 840 (7th Cir. 1992), *citing Johnson v. Railway Express Agency,* 421 U.S. 454, 463-64 (1975).  Because 42 U.S.C. § 1997(e) bars prisoners from filing suit until they have exhausted their administrative remedies, "a federal court relying on the Illinois statute of limitations in a § 1983 case must toll the limitations period while a prisoner completes the administrative grievance process." *Johnson v. Rivera,* 272 F.3d 519, 522 (7th Cir. 2001).  This is

where the statute of limitations issue becomes bound up with the exhaustion issue: when (if at all) did Mr. Moore complete the grievance process–for two years from that date is when the statute of limitations ran. Mr. Moore claims that he last sent an inquiry into the status of his previously filed grievances to the Illinois Department of Corrections' Administrative Review Board ("ARB") on October 21, 2008. Mr. Moore argues that, pursuant to 20 Ill.Adm.Code 504.850, the ARB had six month from that date–so until April 21, 2009–to render a decision, and the statute of limitations would therefore be tolled until April 21, 2011.

Mr. Moore's exhibits, by his own admission at the *Pavey* hearing, were not all directly related to his claim against Dr. Feinerman. Mr. Moore presented the Court with: (1) a copy of a May 6, 2008 letter to Plaintiff from another health services official referring Plaintiff to a follow-up doctor appointment; (2) a copy of an emergency grievance, dated July 16, 2008, returned to Plaintiff from the Chief Administrative Officer ("CAO") with a note denying the emergent nature of the grievance and directing Plaintiff to file a grievance in the normal manner; and (3) an ARB return-of-grievance form directed to Plaintiff regarding an August 3, 2006 grievance, informing Plaintiff that the grievance was not properly filed, and instructing Plaintiff to provide a copy of his grievance officer's response. None of these exhibits bolstered Mr. Moore's narrative timeline of exhaustion. According to Mr. Moore, he proceeded as follows (as actually relates to his claim against Dr. Feinerman): (1) on May 8, 2008, he sent an emergency grievance to the CAO regarding Defendant's refusal to treat him on that date. He received no response from the CAO; (2) on June 10, 2008, he sent the May 8 emergency grievance to his grievance officer, and again received no response; (3) on August 14, 2008, he sent a grievance to his grievance officer regarding Defendant's July 30 refusal to treat his migraines; (4) on September 10, 2008, he sent the May 8 grievance to the ARB;

and (5) on October 21, 2008, he sent his August 14 grievance to the ARB.  In his motion for summary judgment regarding administrative exhaustion, Defendant filed the affidavit of Gina Allen, Chairperson of the ARB, in which Ms. Allen avers that Mr. Moore had not filed any grievances or correspondence with the ARB regarding Dr. Feinerman or migraine treatment from at least January 1, 2008 to September 30, 2008.

### *PAVEY* HEARING

The Court held a hearing on December 5, 2011 at which Mr. Moore appeared via telephone. At that hearing, Defendant presented not only the affidavit of Ms. Allen, but also Plaintiff's own deposition testimony related to a different lawsuit.  That deposition was taken on June 16, 2008, and in it Mr. Moore testified that he had yet to file a grievance.  Though Defendant admitted that Mr. Moore was referencing a medical issue other than his migraine headaches in the testimony, the overall impression left by the deposition testimony was that Mr. Moore had not filed any medical-related grievance at Menard before June 16, 2008.  This conflicts with Mr. Moore's contention that he filed an emergency grievance on May 8, a grievance he claimed to have re-submitted to his grievance counselor six days before the deposition.  Mr. Moore protested that his deposition testimony related solely to issues unrelated to Dr. Feinerman.  Regarding the dearth of any relative grievance exhibits, Mr. Moore told the Court that the law library refused to make copies of grievances and that he could not submit as evidence grievances he never received back.

The Court held a follow-up hearing on February 13, 2012 so that Mr. Moore could attend in person.  Mr. Moore described the accepted grievance 'mail' procedure wherein he posted the grievances in his cell bars for pick-up.  In response to a question, Mr. Moore said he could not remember who his cell-mate was during the time he submitted the alleged Dr. Feinerman grievances.

When asked why he waited until he waited nearly two full years–even by his own estimation of the tolling period–to file a suit against Dr. Feinerman, Mr. Moore simply told the Court that he waited because he knew he had two years to file.  Mr. Moore testified that he had included ARB responses not related to his claim against Dr. Feinerman in his exhibits to show the Court that the ARB was typically delinquent in their response to grievances.

### LEGAL STANDARDS

The Prison Litigation Reform Act (PLRA) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997(e)(a).  Exhaustion of available administrative remedies is a precondition to suit.  *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004); *see also Perez v. Wis. Dept. of Corr.,* 182 F.3d 532, 534-535 (7th Cir. 1999) ("[Section 1997(e)(a)] makes exhaustion a precondition to bringing suit.").  Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust.  *See Jones v. Bock,* 549 U.S. 199, 216 (2007); *Dole v. Chandler,* 483 F.3d 804, 809 (7th Cir. 2006).  Here, neither party disputes that to exhaust under the Illinois Administrative Code, the following steps must be taken: (1) an inmate must first attempt to resolve the complaint informally; (2) if the complaint is not resolved, he must file a grievance within 60 days after the discovery of the problem giving rise to the grievance. Ill. Admin. Code § 504.810; (3) the inmate is required to submit a written grievance to the grievance officer by depositing it in a designated place; (4) the grievance must include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." Ill. Admin. Code § 504.810(b); (5)

if the grievance is an emergency, an inmate may request that the grievance be handled on an emergency basis by submitting it directly to the CAO; (6) for a non-emergent grievance, after the grievance officer addresses the grievance, the grievance officer's decision is forwarded to the CAO. When feasible, the CAO must advise the inmate of a decision within 2 months of the grievance being filed. Ill. Admin. Code § 504.830(d); (6) if, after receipt of the CAO's decision, the inmate feels the issue is unresolved, he may appeal within 30 days, in writing, to the Director of the Department by submitting the grievance officer's report and the CAO's decision. Ill. Admin. Code § 504.850; (7) the ARB is the Director's designee. If an appeal is sent to the ARB without the grievance officer or CAO reports, it is returned to the inmate; (8) the ARB issues a written report to the Director who then makes a final decision. The ARB's report and the Director's final decision is sent to the inmate who filed the grievance. Originals of those documents are maintained in the ARB's files.

"This circuit has taken a strict compliance approach to exhaustion. A prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006), *citing Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). However, an inmate is required to exhaust only those administrative remedies available to him. 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances. *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002). On the other hand, an inmate forfeits the grievance process when he causes the unavailablity of a remedy by not filing or

appealing a grievance. *See Kuba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006).

### PLAINTIFF'S FAILURE TO EXHAUST

Even were the Court to credit Mr. Moore's version of events, it is not clear he properly exhausted his administrative remedies. He says he skipped from an 'emergency' grievance with the CAO to a direct filing–without including any responses from his grievance officer or the CAO–with the ARB. According to Mr. Moore, he failed to follow protocol because he never received responses to his original emergency grievance. The Court is mindful of the Seventh Circuit's decision in *Dole v. Chandler,* where the plaintiff did exhaust his administrative remedies despite the fact that his grievance, placed for pickup in the plaintiff's cell, went missing and foreclosed plaintiff's ability to follow the exhaustion process to the letter. 438 F.3d 804, 811 (7th Cir. 2006) ("He followed Illinois administrative rules to the letter; his complaint remains unresolved through no apparent fault of his own. In this case, the prison authorities acknowledge the initial deposit of the complaint, and the possibility of fraud in filing does not exist."). However, in *Dole,* "[a]ll parties recognize[d] that [plaintiff's] grievance was properly mailed within the correct time frame." *Id*. at 811. Here, Defendant does not acknowledge that Mr. Moore mailed the grievances he says that he mailed.

Neither does the Court credit Mr. Moore's story. Mr. Moore's testimony before this Court was not credible. *See Pavey v. Conley,* 663 F.3d 899, 904 (7th Cir. 2011) (relating that the district court's determination of plaintiff's compliance with exhaustion procedures also "turned largely on the issue of his credibility."). Mr. Moore's forgetfulness regarding the name of a cellmate (who might have verified Mr. Moore's claims that he repeatedly wrote and mailed grievances) was suspect. Mr. Moore also told the Court that he had received some mail from the ARB, and he named members of the ARB. It was clear from his own testimony that he did receive some communication

from the ARB. Responses from the ARB were demonstrably not shut off to Mr. Moore. The Court does credit the affidavit of the ARB chairperson who averred that none of what they received from Mr. Moore concerned Defendant Dr. Feinerman or Mr. Moore's migraine headaches. The Court simply does not believe that Mr. Moore attempted to exhaust his administrative remedies.

### CONCLUSION

The Court consequently **GRANTS** Defendant's motion for summary judgment for Plaintiff's failure to exhaust administrative remedies (Doc. 15). The Court need not rule on whether Plaintiff filed his complaint out-of-time. Other pending motions in this action are **MOOT**, Judgment will be entered for Defendant, and this case will be closed on the Court's docket.

**IT IS SO ORDERED.**

DATED: February 27, 2012

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge